# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **KEVIN MARTIN,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action Number |
| ) | **2:11-cv-01563-AKK** |
| **SHELBY TELECOM, LLC,** ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendant Shelby Telecom, LLC's ("Shelby") motion for summary judgment. Doc. 12. The sole issue raised by Shelby's motion is whether Plaintiff Kevin Martin ("Martin") was an "employee" under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201-19—and therefore under the protection of the FLSA's overtime provisions, 29 U.S.C. § 207—or an independent contractor. Resolution of this issue conclusively determines whether Martin is entitled to proceed with his claim. For the reasons stated below, summary judgment is **DENIED**.

## I. SUMMARY JUDGMENT STANDARD OF REVIEW

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any

1

material fact and the movant is entitled to judgment as a matter of law." Material facts are facts that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Substantive law will identify which facts are material." *Id.* at 248. To support a summary judgment motion, the parties must cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c). Moreover, "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish that there is a "genuine issue for trial." *Id.* at 324 (citation and internal quotation marks omitted).

A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The court must construe the evidence and all reasonable inferences

arising from it in the light most favorable to the nonmoving party. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Anderson*, 477 U.S. at 255 (all justifiable inferences must be drawn in the nonmoving party's favor). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)). Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).

## II. PROCEDURAL AND FACTUAL BACKGROUND

Shelby has at various times performed computer repairs, constructed towers for Internet service, and installed the satellite television and Internet systems of several companies, among other services pertaining to television and electronics. Doc. 14-2, at 9:7-15:16 (Burttram[1] Dep. 9:7-15:16). Specifically for purposes here, Shelby provided services for Dish Network pursuant to a contract with

---

[1] David Burttram started working at Shelby in 2006 and became forty-nine percent owner a short time thereafter. Doc. 14-2, at 8:13-18. Sometime around September 2010, Burttram became the sole owner of Shelby. *Id.* at 7:9-8:4.

Satellites Unlimited.[2]  *Id.* at 12:2-12.  Satellites Unlimited required Shelby to ensure that all the technicians Shelby assigned to Satellites Unlimited installations had worker's compensation insurance.  *Id.* at 53:7-12.  To comply, Shelby provided coverage for its technicians, including Martin, *id.* at 53:13-15; doc. 14-1, at 36:23-37:22 (Martin Dep. 36:23-37:22), and deducted the premiums from their paychecks, doc. 14-1, at 37:23-38:7.

Martin joined Shelby in August 2010.  Doc. 14-1, at 10:2-7.  Initially, Martin trained for approximately seven days with Chris Graves, a field service manager at Shelby.  *Id.* at 13:11-16:6.  Thereafter, Martin worked on his own installing Dish Network satellite systems exclusively for Shelby.  *Id.* at 10:2-10, 14:11-15:4, 16:3-6.  Shelby paid Martin by the job.  *Id.* at 11:6-9.  Martin resigned from Shelby in April 2011 when he became dissatisfied with several aspects of his work.  *Id.* at 10:19-12:6.  He filed this lawsuit on May 12, 2011, alleging that Shelby failed to pay overtime wages as required by 29 U.S.C. § 207.  Doc. 1.  Stated differently, Martin contends that Shelby should have paid him by the hour instead of by the job.  Martin seeks to bring this action as an opt-in collective action pursuant to 29 U.S.C. § 216(b) on behalf of "any and all persons . . .

---

[2]Shelby also served as a retailer of Dish Network services and installed the systems it sold.  Doc. 14-2, at 15:20-16:23.

performing cable installation services" for Shelby "at any time during the three years preceding the filing of the Complaint." *Id.* at 6 (Compl. ¶ 6).

### III. CONTROLLING LAW

The key issue to resolve in this lawsuit is whether Martin is an "independent contractor" or an "employee." The distinction matters because the FLSA only protects "employees." *Freund v. Hi-Tech Satellite, Inc.*, 185 F. App'x 782, 782 (11th Cir. 2006). An "employee" is "any individual employed by an employer." 29 U.S.C. § 203(e)(1). To "employ" is defined broadly as "to suffer or permit to work." *Id.* at § 203(g). "Given the remedial purposes of the legislation, an expansive definition of employee has been adopted." *Usery v. Pilgrim Equip. Co.*, 527 F.2d 1308, 1311 (5th Cir. 1976).[3] However, "independent contractors" are not protected. *See Freund*, 185 F. App'x at 782. In distinguishing between employees and independent contractors, the controlling factor is whether, "as a matter of economic reality," a worker is "*dependent* upon the business to which they render service." *Usery*, 527 F.2d at 1311 (quoting *Bartels v. Birmingham*, 332 U.S. 126, 130 (1947)). Thus, economic reality, rather than any label placed on the relationship by the parties, controls. *Rutherford Food Corp. v. McComb*,

---

[3]The Court of Appeals for the Eleventh Circuit "adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981." *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

331 U.S. 722, 729 (1947) ("Where the work done, in its essence, follows the usual path of an employee, putting on an 'independent contractor' label does not take the worker from the protection of the [FLSA].").

Several factors guide the inquiry into the economic reality of the parties' relationship:

(1) the nature and degree of the alleged employer's control as to the manner in which the work is to be performed;

(2) the alleged employee's opportunity for profit or loss depending upon his managerial skill;

(3) the alleged employee's investment in equipment or materials required for his task, or his employment of workers;

(4) whether the service rendered requires a special skill;

(5) the degree of permanency and duration of the working relationship;

(6) the extent to which the service rendered is an integral part of the alleged employer's business.

*Freund*, 185 F. App'x at 783 (quoting *Sec'y of Labor v. Lauritzen*, 835 F.2d 1529, 1535 (7th Cir. 1987)). "No one of these considerations can become the final determinant, nor can the collective answers to all of the inquiries produce a resolution which submerges consideration of the dominant factor–economic dependence." *Usery*, 527 F.2d at 1311 (citing *Mednick v. Albert Enters., Inc.*, 508

F.2d 297 (5th Cir. 1975)).  Put differently, "[t]he purpose of weighing the factors is . . . to view them qualitatively to assess the evidence of economic dependence." *Antenor v. D & S Farms*, 88 F.3d 925, 933 (11th Cir. 1996).  In performing this balancing test, the ultimate determination of an individual's employment status is a question of law.  *Id.* at 929.  "Subsidiary findings are considered issues of fact." *Freund*, 185 F. App'x at 783 (citing *Patel v. Wargo*, 803 F.2d 632, 634 n.1 (11th Cir. 1986)).

## IV. ANALYSIS

As noted by the court in *Lang v. DirecTV, Inc.*, 801 F. Supp. 2d 532, 536 (E.D. La. 2011), courts have reached mixed results about whether satellite and cable installers are employees or independent contractors under the FLSA. Generally, most courts have decided this issue after a trial.  In this circuit in particular, most of the district courts that have faced this issue have found that a factual determination was necessary to properly assess the *Freund* factors for economic dependence.  *See Freund v. Hi-Tech Satellite, Inc.*, 185 F. App'x 782 (11th Cir. 2006) (upholding decision of trial court after bench trial that plaintiff was an independent contractor); *Parrilla v. Allcom Constr. & Installation Servs., LLC*, No. 6:08-cv-1967-Orl-3GJK, 2009 WL 2868432 (M.D. Fla. Aug. 31, 2009) (holding after bench trial that plaintiff was an employee); *Santelices v. Cable*

*Wiring*, 147 F. Supp. 2d 1313 (S.D. Fla. 2001) (denying summary judgment and finding genuine issues of material fact as to plaintiff's employment status).[4] The court joins these courts and, for the reasons discussed below, finds that there are genuine issues of material fact regarding the nature and degree of control Shelby exercised over Martin's work and his opportunity for profit and loss.

### A. Nature and Degree of Shelby's Control

The parties dispute Shelby's control over Martin's work. Shelby argues that it exerted minimal control over Martin and primarily intended to assure customer satisfaction rather than determine the details of Martin's hours or methods. Doc. 13, at 10 (Def.'s Br. 10). Consequently, although Shelby scheduled installation appointments, required Martin to follow technical specifications, and mandated that Martin log in at the beginning and end of each job, Shelby contends that Martin otherwise maintained the freedom to determine the methods he used and the order he performed scheduled jobs. *Id.* As further proof that it did not control Martin, Shelby asserts that it permitted Martin to establish a corporation and hire helpers, that Martin had his wife's assistance approximately forty percent of the

---

[4]In another factually similar case, *Chao v. Mid-Atlantic Installation Servs., Inc.*, 16 F. App'x 104 (4th Cir. 2001), the Fourth Circuit affirmed the trial court's grant of summary judgment holding that the plaintiff was an independent contractor. Nevertheless, the court finds it prudent in the instant case to reach a legal determination on this issue after a factual determination.

time, that Martin could perform additional work for customers on his own, and that Shelby never required Martin to wear a uniform. *Id.*

Martin, however, contends that Shelby exerted considerable control over his work. Doc. 18, at 11 (Pl.'s Br. 11). Specifically, Martin asserts that Shelby assigned the jobs, imposed technical specifications, and mandated certain tools and equipment. *Id.* at 11. Martin emphasizes further the risk of fines for starting later than 8:30 each morning, the long drives necessary to adhere to Shelby's order of installations, the quality checks Shelby conducted that carried a risk of penalties, and the lack of discretion to decline work. *Id.* at 11-12. In short, Martin claims Shelby "controlled every facet of [his] work." *Id.* at 12.

Disputed material facts preclude the court from finding as a matter of law on summary judgment that Martin "exert[ed] such a control over a meaningful part of the business that [he stood] as a separate economic entity." *Usery*, 527 F.2d at 1312-13. First, a dispute exists as to the degree of discretion Martin exercised in choosing to accept jobs and in determining which days he worked. For example, although Martin claimed he requested up front every other Sunday off to be with his two children on the days he had them for visitation, allegedly, Shelby scheduled him for jobs nonetheless on some of these Sundays which Martin could either accept or pay a fine. Doc. 14-1, at 50:19-51:3, 51:11-13. Although

9

Burttram disputes this contention and testified that he never told Martin he would fine him when Martin asked for a day off, doc. 14-2, at 91:20-92:2, evidence in the record indicates Shelby imposed a $100 fine for failure to show for a scheduled job without notification by 7:00 a.m., doc. 14-4, at 5 (Def.'s Ex. 2, at 5). Moreover, consistent with his testimony about the Sunday scheduling, Martin stated in a subsequent declaration that he "had to beg for an off day" and that on at least one occasion he requested off for vacation by giving the appropriate three days notice but Shelby denied his request, threatening fines and termination. Doc. 17, at 5 (Martin Decl. ¶ 6, April 5, 2012).[5]

The parties also dispute the degree of discretion Martin had over his geographic assignments. *Compare* doc. 14-1, at 59:7-8 ("I had a time where I was sent to Mobile for two weeks . . . ."), *and* doc. 17, at 4 ("One time, David [Burttram] told me to go to Mobile to do some installations for a week. I did not

---

[5]Shelby contends in its Reply Brief that Martin's declaration contradicts his deposition testimony. Doc. 19, at 2. The Eleventh Circuit held in *Van T. Junkins and Assocs., Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 658 (11th Cir. 1984), that an affidavit can create a genuine issue of fact unless it is "inherently inconsistent" with earlier testimony. An affidavit constitutes a sham if the party contradicts "clear answers to unambiguous questions which negate the existence of any genuine issue of material fact." *Id.* at 657. Failures of memory and variations in witness testimony, on the other hand, create issues of credibility which are questions of fact to be resolved by the fact-finder. *Tippens v. Celotex Corp.*, 805 F.2d 949, 953-54 (11th Cir. 1986). Martin's deposition testimony is not inherently inconsistent with his declaration; rather, the deposition testimony could reasonably be read in its context to reflect Martin's understanding of Shelby's general vacation policy as opposed to the policy's application to him. Doc. 14-1, at 53. Accordingly, this court will not attempt to determine Martin's credibility based on, at best, ambiguous statements.

want to go . . . ."), *with* doc. 14-2, at 25:21-27:5 (Burttram testifying that Martin sought more work in Mobile). Martin stated that Shelby threatened fines and termination when he attempted to refuse unprofitable jobs in distant locations or when he needed time off due to sickness. Doc. 17, at 4. Allegedly, Shelby issued the same threats when he attempted to refuse work due to inclement weather. *Id*. Shelby disputes all of these contentions, further making this issue inappropriate for summary judgment disposition. Doc. 14-2, at 91:20-92:2, 102:7-105:10, 120:6-8; doc. 19, at 1.

Likewise, a genuine dispute of material fact also exists regarding Shelby's control of Martin's daily work schedule. Although Burttram testified that Martin and other installers could freely choose to accept a $30 fine without further repercussions and come to work later than 8:30 a.m., doc. 14-2, at 98:6-16, a reasonable fact-finder could conclude from the evidence that Shelby used additional measures to ensure compliance with its starting time, doc. 14-4, at 5. For example, Burttram mentioned several occasions when Shelby called Martin and Martin's grandparents for several hours to wake Martin up because Martin was late or had not confirmed by 7:00 a.m. that he had received his jobs. Doc. 14-2, 63:8-64:13, 92:3-93:16, 108:10-109:1, 109:16-110:3. Moreover, Martin also stated that Shelby required its installers to complete their "AM" (morning) jobs

before their "PM" (afternoon) jobs. Doc. 14-1, at 60:4-23. Indeed, while Martin's deposition makes clear that he had discretion within each category to determine the order of his jobs, *id.* at 60:13-18, apparently, when Martin requested on some occasions to perform morning jobs in the afternoon and vice versa in order to save driving time, Shelby allegedly threatened Martin with fines and termination, doc. 17, at 5. Furthermore, it is undisputed that Shelby required Martin and other installers to log in at the beginning of each job and log out at the end using an automated phone service. Doc. 14-1, at 44:13-46:4; doc. 14-2, at 27:6-10. In fact, the record contains evidence that Shelby monitored Martin's log-in and log-out times, called customers and Martin when a job seemed to take longer than usual, and sometimes even called Martin when he logged in on time. Doc. 14-2, at 115:5-119:23. In light of the foregoing evidence, a reasonable trier of fact could find that Shelby controlled Martin's daily work schedule.

Finally, as it relates to the nature and degree of control prong, the court notes that Shelby relies primarily on *Freund v. Hi-Tech Satellite, Inc.*, 185 F. App'x 782, 783 (11th Cir. 2006). Doc. 13, at 10; doc. 19, at 2. Although this reliance is certainly not misplaced, the disputed issues of material fact discussed previously and several distinctions between *Freund* and the present case preclude the court from concluding as a matter of law that Shelby exercised so little control

over Martin's work that he could not reasonably be considered an employee. First, the district court in *Freund* reached its decision *after a bench trial*. 185 F. App'x at 782. In other words, unlike this court, it had the benefit of live testimony and could make credibility determinations. Second, the installer in *Freund* was able to reschedule the assigned jobs. 185 F. App'x at 783. In contrast, there is evidence here that Martin's discretion to perform jobs at different times was limited to reordering his morning and afternoon jobs as long as he performed them during the morning or afternoon Shelby scheduled them, and was subject to threats of fines and termination. Finally, while installers had to follow installation specifications in both *Freund* and the instant case, doc. 14-5, at 5-7, the court in *Freund* did not discuss any specific measures taken to enforce that policy. Conversely, here, there is evidence that, among other things, Shelby closely monitored Martin's log-in and log-out times and that on numerous occasions Shelby called Martin, Martin's family, and customers to ensure Martin's compliance. In short, the facts in *Freund*, while broadly similar, are insufficiently detailed to be dispositive in this case.

The court's reading of *Freund* is reinforced by *Parrilla*, which offers an instructive, albeit brief characterization of the facts found by the district court in *Freund*:

> In *Freund*, the District Court found, *inter alia*, that the plaintiff, a home satellite and entertainment systems installer, "solely determined the hours he spent at work;" was "at liberty to re-schedule any of his appointments with customers;" was "free to schedule as many work days and off-days as he desired;" was "free to perform installations for other companies;" and was not subject to charge-backs or other significant limitations in terms of how he actually carried out his work. *See* Case No. 9:04-CV-80117-DTKH (S.D. Fla. June 10, 2005) (Doc. 41 at 2-3). Plaintiff clearly had none of these freedoms.

*Parrilla*, 2009 WL 2868432, at *6. As in *Parrilla*, the evidence in the present case, construed in the light most favorable to Martin, demonstrates significant distinguishable characteristics from *Freund*. The record here could reasonably support a finding that Shelby determined the hours Martin spent at work, significantly limited Martin's discretion to reschedule appointments, controlled Martin's on and off-days, and subjected Martin to various fines based on job performance, doc. 14-4, at 5. In light of these considerations, the court simply cannot conclude as a matter of law at this stage that Shelby exercised little control over Martin's work and that Martin had such control that he stood "as a separate economic entity." *Usery*, 527 F.2d at 1312-13. The court therefore concludes that there are genuine issues of material fact as to the nature and degree of control Shelby exercised over the manner in which Martin performed his work.

  **B.** **Martin's Opportunity for Profit or Loss**

  The parties also strongly dispute Martin's opportunity for profit or loss.

Shelby points to several alleged facts it finds indicative of independent contractor status. First, Shelby asserts that it compensated Martin by the job and permitted him to hire helpers, allowing him to increase efficiency, take more jobs, and thereby earn more money. Doc. 13, at 11. Second, Shelby claims that it allowed Martin to perform jobs for other companies or individuals at his discretion. *Id.* Third, Shelby contends that Martin could take off for as long as he wished with three days notice and use his off days as he chose, that it permitted Martin to perform side work even on the days he worked for Shelby, and that by reordering his jobs Martin could perform them more cost effectively. *Id.* Finally, Shelby argues that *Freund* is dispositive on this element as well. Doc. 19, at 3.

Martin disagrees and relies heavily on *Parrilla*. Specifically, Martin maintains that, as in *Parrilla*, his opportunity for profit depended solely on the number and type of jobs Shelby assigned him. Doc. 18, at 12-13 (citing *Parrilla*, 2009 WL 2868432 at *3). Martin contends also that Shelby denied his requests for time off and that the long hours forced him to seek his wife's help to complete his assigned jobs and prohibited the performance of any outside work. Doc. 18, at 13.

To determine Martin's opportunity for profit or loss, the court must settle factual disputes about the control Martin exercised over the jobs he received, the

days he worked, and his schedule each day. It is only after a resolution of these issues that the court can determine whether Martin had sufficient opportunity to profit based on his managerial skill. Thus, the court concludes that genuine issues of material fact exist with respect to Martin's opportunity for profit or loss as well.

### C. Remaining Factors

Resolution of the factual disputes as to control and opportunity for profit and loss is essential to a cogent analysis of the remaining factors. The court in *Parrilla* noted that no single factor is determinative, but that "courts must consider the totality of the circumstances." 2009 WL 2868432, at *2 (citing *Usery*, 527 F.2d at 1311); *see also Freund*, 185 F. App'x at 783. In the present case, the court must first resolve the disputed facts regarding the first two factors before it can adequately consider the remaining factors in light of the totality of the circumstances. Making factual findings and drawing legal conclusions with respect to the remaining factors without the benefit of the full factual context risks an inaccurate legal determination. *See, e.g.*, *Lang*, 801 F. Supp. 2d at 540 ("Given the disputed issues of fact on control and on plaintiffs' ability to influence their profits and losses, regardless of the outcome of the analysis on these other factors, the Court is still unable to accurately determine plaintiffs' status on this summary judgment record."). Accordingly, the court declines to reach the remaining factors

at this stage of the proceedings.

## V. CONCLUSION

Construing the evidence in the light most favorable to Martin, the court finds that genuine issues of material fact remain with respect to the nature and extent of Shelby's control over Martin's work and Martin's opportunity for profit or loss based on his managerial skill. Accordingly, the motion of Defendant Shelby Telecom, LLC for summary judgment is **DENIED**.

**DONE** and ordered this 26th day of June, 2012.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE